The next case on for argument is Ortho-Clinical Diagnostics, Bermuda Company versus FCM. Good morning, your honors. May it please the court, Melissa Arbacheri here on behalf of Ortho-Clinical. We are here this morning because FCM and Ortho entered into an engagement agreement under which Ortho paid well over $30 million and received very little in return. The parties agreed to terminate that agreement and Ortho agreed to a narrow and carefully negotiated release that was limited to claims that were actually known by one of three individuals and no other claims. The complaint in this case alleged multiple breaches of contract and the district court itself found that the facts underlying some of those breaches were not actually known at the time of the settlement agreement. The district court nevertheless dismissed all claims relating to the engagement agreement. That categorical holding on a motion to dismiss was error based on the district court's own findings and own reasoning and this court should reverse and remand. In this case, FCM barely responds to that argument. It does not dispute that as a general matter you can have multiple claims for breach of contract. And it does not dispute that the district court itself looked at this complaint and found that Ortho had adequately alleged that some facts were not known at the time, including the- Before we get to the settlement agreement and the scope, I wonder if you could just point me to the provisions in the engagement agreement or consulting agreement that gives rise to the breach of contract claim for failure to prepare an infrastructure plan or provide subcontractors with guidance. I was struck by the absence of clearly defined deliverables in this contract. And the performance was really due at 25 months, not at 11 months. You had an out at the third toll gate. But there were very few concrete items that were specified in the contract. And although I can understand why Ortho would have had concerns that FCM was not progressing apace, it's still, FCM didn't seem to have any obligations to make deliveries at particular times of concrete items. So if you could point me to something in the agreement, perhaps I've overlooked a relevant provision. I'm happy to do that. I want to make a preliminary point, though, before turning to the agreement. This was something that was not before the district court. So the motion to dismiss before the district court was limited just to the release issue. FCM had asked permission to move with respect to the breach as well and was not granted that permission. So they actually haven't yet moved to dismiss with respect to whether or not there's a breach alleged in the complaint itself. I ask the question because I wanted to understand how the engagement contract worked before I got to what did the release address. Right. What claims were known or not known. And I found it very difficult to ascertain the answer to that question. Yeah, so on the engagement agreement, I point to a couple things. I'd start with page 302, which is the beginning of the engagement agreement. This is in the joint appendix 302 that talks about the objectives and it says that FCM promises to deliver the standalone IT system that will consist of both infrastructure and applications. That's the end project. And so then if you continue on, and this is on page 305, it talks about the program approach and that there'll be program planning, and this is a process-oriented approach. If you go a little bit- And once again, no deliverable. This is just how are we going to do this job, right? Right, and so I'm going to continue on. If you go to the toll gate approach, and this is at page 309, it does talk about toll gate three, but it goes on after that to say we're going to then translate business requirements into technical requirements. And importantly, the toll gates, and I don't think FCM would dispute this because they argued this below, what was promised with respect to the different toll gates, only some of which are in the record at this point, were a number of additional promises along the way, and that's also incorporated into the engagement agreement. I think most importantly is industry practice. So if you look at the original complaint, paragraph 53, it says, when you're entering into this sort of agreement for a transition project that is this complex, you would certainly expect and you would contract for having these integrated plans, infrastructure plans at the initial stage during 11 months of what was only a 25 month contract would be standard practice. Again, there's nothing in the contract that says you need to have done x by y period. There's just a kind of expectation and an approach. There's a general, it is general in that respect. Again, I think the toll gates have more specific promises that are incorporated into, and again, I think as a general matter of contract interpretation, industry practice can be used to give meaning to what those terms are. So what the program approaches and what you would expect at different stages of the contract. Similarly, in the settlement agreement, can you point me to any term that obligates FCM to create new planning materials? If we're talking about the second argument with respect to the breach of the settlement agreement, so yes, I would point the court to, if you look at section three, it's the transition services provision, and it's not a question of new plans. What it required FCM to do was to provide, quote, all reasonably required assistance that is necessary to transition. So it's a broad term, all reasonably required assistance. What does that include? It includes things like documentation, information, access to employees. And so again- And you believe that that's correctly interpreted to require the creation of new documents rather than just give us everything you've created to date? I think it's correctly interpreted, not necessarily that they had to create. I think FCM promised to provide what would be reasonably required under those circumstances. And the circumstances are you're 11 month into a 25 month agreement. We've agreed to pay over $3 million for these services. FCM has dedicated three employees specific to infrastructure and has promised at least six months it would take to transition this. So I think at the very least, it's ambiguous as to whether it includes a promise to provide these plans and transition services with respect to these plans, and we're on a motion to dismiss. The district court held as a matter of law that you absolutely cannot read that language to include such plans. And that's what we're disputing before the court with respect to the settlement agreement. If I could go back for a moment to the engagement agreement. Our primary argument here, and it's one that was before the district court in the first motion to dismiss, is that the release was limited. It was very limited to actually knowing that it's a unique release in that respect, and it was carefully negotiated in that way. The district court, if you follow the opinion, it starts off on page 13 of the special appendix, and it on page 13 and 14 walks through facts that were actually known at the time. On page 15, it gets to facts that were not actually known, and that includes the failure to create this end-to-end infrastructure plan. And then you get to page 19, and the district court concludes that all claims relating to the engagement agreement have been released. We would submit that that conclusion simply does not follow from the reasoning that comes before, and it's not consistent with the standards that are applicable on a motion to dismiss. On a motion to dismiss under this court's decision in Subaru, the district court agrees, FCM agrees, any ambiguity needs to be construed in favor of the plaintiffs, in this case, Ortho. The only thing before the court was the release. With respect to the engagement agreement and the claims that were then released by the settlement agreement, I have a similar question to Judge Carney, which is it's hard to see what the claims are for known at the time of the settlement agreement and that were then released. Putting aside the creation of an integration plan, which is, I read Judge Buchwald's decisions. She thought that was covered, if at all, by the settlement agreement, not that it was a requirement of the initial engagement agreement. And so when I look at the initial complaint, even the amended complaint, it appears that the claims for breach of contract were in fact known by those three people. Because the gist of the complaint is it was known that FMC was not performing. And Ortho said, enough's enough, in the words of the complaint, I think. They weren't doing the work and they weren't doing it on time. That's the essence of the breach of contract claim. That was known and that was released. What else was there? So if I can, and I see my red light is on. If I can answer that, I'd like to walk you through the original complaint, this is equally true in the amended complaint. But there is no question, I mean, we candidly admit it all along that there were certain breaches that were actually known at the time. The most obvious one is the fact that they refused to perform work in certain countries that were deemed to be outside of the scope. But the complaint is equally clear that there were other breaches that were not known and that the complaint was alleging multiple breaches of contract. And so if you first look at paragraph 72 of the original complaint, and that is, I believe on, let's see, JA 21. Paragraph 72 says that there's a material breach by failing to plan, that's number one. Then if you go to paragraph 74, 74 says that certain claims amounting to a material breach of contract were not known by these employees, suggesting that there's more than one breach of contract, certain breaches were known, other breaches were not known. Paragraph 70 does what most complaints do, which is re-alleges and incorporates all the factual allegations that came before. And then if you look at the factual allegations, look at paragraph five, look at paragraph 29, look at paragraphs 33, 34, look at paragraph 45, and especially look at paragraphs 49 to 62. And it states time and time again that they were required to prepare these plans, that they failed to do so, and that this was something that was learned only after the settlement agreement. And the reason why it was learned only after the settlement agreement was because there was an informational disadvantage here. We didn't have access to the subcontractors. That was a really important part of the settlement agreement. Failure to prepare the plans was alleged to be a breach of the settlement agreement and the additional obligations in the settlement agreement. No, that may have been where the district court judge got confused, but that is absolutely not true. If you look at count one of the original complaint, it's alleged as a breach of the engagement agreement. And in fact, FCM has argued all along that we added this additional breach of the settlement agreement for the first time in the amended complaint. The original complaint alleges it as a breach of the engagement agreement. That may have been why the district court reached that conclusion, but the original complaint doesn't support it. Thank you. And you've reserved two minutes for rebuttal. Aiden Sennett from Paul Weiss, Your Honor, for the appellees. I think Judge Codall, you got it exactly right. The complaint alleges all of the contract breaches quite clearly. It says that Ortho didn't trust FCM, it didn't trust Mr. Habib. It realized it wasn't performing, it wasn't delivered what had been committed under the agreement. There is no suggestion there was any plan to be delivered in addition to the toll gate three plan that's laid out in the agreement and that Judge Buchwald referred to. And that page that Ms. Sherry directed you to says quite clearly that the plan is, the agreement is to provide toll gate three. Which will be a detailed transition plan including key milestones. That document was provided on time. Ortho had an option to exit the agreement if it wasn't happy with that plan at the time that it received it. That plan was received, reviewed, and signed off on by Ortho, including Mr. Marcial, who's one of the people who is charged with knowledge of things under the agreement. There was no commitment to any other plan in the agreement. And so, Ortho had first the plan that was promised under the agreement, had the opportunity to consider whether it wanted to go forward with the agreement, signed off on that plan, which covers transition milestones in great detail and delivers everything that's referred to on page 311 of the joint appendix. Which Ms. Sherry referred to, and that plan runs to, I think, 397 pages. Although, I have to say, I have to say, the plan looked like a PowerPoint. The contract looked like a PowerPoint, a sales document. I mean, I was struck by the vagueness of every aspect of these contracts. And I came away wondering whether the record, I mean, we're on 12B6, but whether the record showed that Ortho got anything for the over $37 million that it paid over the course of this engagement. Does the record contain any material of substance? I guess, Your Honor, on this motion, I'm stuck with the complaint as alleged by Ortho. Ortho obviously doesn't lay out what actually happened, but I think there's enough in the complaint to show you that they knew of every breach they now allege, and they released the claims they knew of. And they're stuck with their agreement, which they shoved in front of FCM and told them they had four hours to sign. There were other documents that were alluded to in the complaint, and that the parties referred to in their discussions here. Is there nothing more? I mean, we have three volumes of appendix that include such things as this Tollgate 3 PowerPoint that has a lot of icons and not much by way of specifics. I take it there's nothing more? Well, there's nothing more in the record. There is much more that actually happened, which isn't cited in the complaint. The documents that are appended, I think- Which is not cited in the complaint? Which is not cited in the complaint. All right. What the complaint says, I'm sorry, Your Honor. Isn't that a problem? I mean, we're here on a 12B6. Complaint's been tossed, and there's an allegation that these things were reserved if these people did not have actual knowledge of them. It seems to me you may have it on summary judgment, but- I think we have it here, Judge. I mean, I was answering the question- No, I know you do, because that's why you're arguing to us. I was answering the question from Judge Carney, is there more? Yes, there's more. It's not in the record here. It may be in the record later on, but there's enough in the record to show knowledge, which is what Judge Buchwald found. The complaint alleges that they didn't trust my people, that they knew they hadn't performed, that they hadn't delivered things that were promised under the contract. That's all alleged in their complaint. The same complaint that says they didn't know about any of this, and in fact, while Ms. Sherry said they candidly admitted they knew about some of the breaches of the contract, in fact, they submitted affidavits from the three people who supposedly had knowledge, each of whom denied that they had any knowledge of any claim asserted in the complaint. That's Maddow, Yates, and- Yes, Your Honor. They each- Remind me, how did we get to having affidavits on a motion to dismiss? Wasn't my idea, Your Honor. They were submitted by Ortho in opposition to our motion to dismiss. They were form affidavits that said for each of the three people who supposedly had knowledge, I have no knowledge. Then their lawyer showed up at the oral argument on the motion to dismiss and said, well, of course we had knowledge. Because one of the other documents they submitted, also in opposition to our motion to dismiss, was an email from their general counsel to our outside lawyer saying, don't worry about the J&J claims and the out of scope claims, we know about those. So the record is amply clear that they knew about the contract violations under the original contract, based on their own allegations and their own submissions to the district court. Should I turn to the settlement agreement? Sure. The district court quite clearly found that the settlement agreement is clear and unambiguous, which it is. It says that FCM will provide assistance with transition to other providers, that FCM is out of the picture. And it will turn over documents that it has, it will make its employees available. And there were nine employees that it made available for a six to a nine month period for transition afterwards and to help with all of the information FCM had learned during the time period. The language of that provision actually contradicts any argument that what they were really bargaining for was a plan, because the language of that paragraph that talks about transition assistance, talks about what work will be done going forward, and says all, some or all of the transition assistance can be provided at Ortho's own offices. So what they were really buying in the transition assistance provision of the settlement agreement was help going forward, consulting, attendance by FCM personnel. And there's not a whit of evidence in the agreement to suggest that they were entitled to an end to end plan or that one had been promised. And I submit to you that if such a plan had been promised, any competent attorney would have drafted the agreement to say that such a plan should be delivered. But to the contrary, they submitted yet another affidavit on another motion to dismiss, from the Latham lawyer who drafted the transition assistance provision, who said, I understood that Ortho was unhappy with FCM, but I was under the impression, I think is his phrase, that FCM must have done something over the course of the agreement. And I wanted to draft a provision that provided that that information would be made available to Ortho. There's no suggestion in his affidavit that what he was trying to capture was a end to end plan to transition the software systems. And it doesn't make any sense, frankly, that such a plan would exist and be turned over by a contractor at the beginning of the period, with the kind of detail that Ortho now says we should have provided, which is the ability to transition every software program and to match every step in the transition program. Mr. Senate, we could agree with you on your argument on this latter issue and disagree with you on the first, and that would not be logically inconsistent, correct? I think it would not be logically inconsistent, but it might be inconsistent with the record, Your Honor. I think that's for us to determine. Absolutely. Let me address one final point. While one of the appellees here is Ortho Inc., one of the appellants here is Ortho Inc., and one of the appellees is Mr. Habib. Neither of those entities is a party to either of the contracts, which are the sole remaining claims that Ortho is pursuing in this case. And regardless of any decision on either of these issues, the judgment of dismissal by the district court should stand as to those two entities. Thank you, Your Honors. If I could make five points in response. First, FCM commits the same error as the district court in that it fails to disaggregate the different breaches that were alleged. When it talks about what there's evidence of knowledge, it talks about the out of scope countries, it talks about certain disputes with J&J. It doesn't point to anything suggesting that they actually knew that FCM had not created this infrastructure plan or any sub plans. And contrary to what FCM said, the district court held exactly the opposite at page 15 of the special appendix. Where is the obligation to create an infrastructure plan by the time that the agreement was terminated? This is alleged to paragraph 53 of the original complaint that says as a matter of industry practice, that 11 months into a 25 month plan, you would expect them to have actually planned out what is supposed to be completed 14 months later. We can look at the contract, can't we, and find out if in fact there is any such provision? Not at this stage of the proceedings, because again, the only motion that was before the district court on the engagement agreement was limited to whether it was released under the settlement agreement. So what I think your honor is talking about is where you would identify the breach in the agreement. That would be something for the district court to look at at remand. It just wasn't briefed in the district court and it hasn't been briefed in this court. But don't we have to determine whether there were actual breach of contract claims that were not released by the settlement agreement? So we would have to see whether there were any such. You refer now to the fact that there was a breach by the failure to prepare an infrastructure plan. So to determine whether there was such a breach that was not released, we would have to look at the agreement and find out, well, in fact, was there such a contract agreement? Again, I- There were possible breach that was not released. I think you'd look at the motion to dismiss stage. I think you'd look to the allegations of complaint, and you're right, the engagement agreement is attached to the complaint. But I think you would look at the paragraphs I pointed you to, as far as the complaint goes, paragraph five, paragraph 23, 24, 29, and so forth. But as far as the engagement agreement, I think I'd go back to my answer initially, is if you look at the engagement agreement, you look at page 302, you look at page 305, you look at the toll gates. I mean, the problem here is because this wasn't an issue before the district court, toll gate three is in the record, and I want to talk about that briefly. But the other toll gates that were provided, which include additional promises that speak to this issue, they're not in the record at this point in the proceedings. As far as toll gate three goes, your honor is right. I mean, there are 32 pages. It's a PowerPoint presentation. There's 32 pages talking about infrastructure. That's not the plan we're talking about. It was never intended to be that plan. If you look at some of the pages 605, I mean, it shows a map about, with a picture of a truck in a cloud. That's not the type of plan you would expect for a $70 million transition project. The two other points, your honor, if I may, in terms of the affidavits and why they're in the record. They're in the record because they alternatively moved on 12B1 grounds in order to try to get additional facts into the record. And JA 162, I think it's note three, says we're only introducing the affidavits for that limited purpose. And finally, I think my colleague said, there's nothing more in the record. That's precisely our point. We're here on a motion to dismiss. We're limited to allegations in the complaint. And the allegations in the complaint, as the district court itself found, were sufficient to show that there were some breaches of contract that were not actually known at the time the settlement agreement was entered into. Thank you very much. Thank you both. We will reserve decision in this case.